# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MERIDIAN CHEMICALS, LLC, ET AL,    CIVIL ACTION

VERSUS

TORQUE LOGISTICS, LLC, ET AL    18-002-SDD-EWD

## RULING

Before the Court is a *Motion for Summary Judgment*[1] filed by Defendant, Kinsale Insurance Company ("Kinsale"). Kinsale is the Commercial General Liability Insurer of Torque Logistics, LLC, ("Torque"). Plaintiffs, Meridian Chemicals LLC ("Meridian"), and Aspen Specialty Insurance Co. ("Aspen"),[2] have filed an *Opposition*.[3] Kinsale filed a *Reply*.[4] For the following reasons, the Court finds that the *Motion* should be GRANTED.

## I.   FACTUAL BACKGROUND

Meridian instituted the foregoing action against Torque and its insurer Kinsale Insurance Co. for Torque's failure to manage and oversee tanks of Black Liquor Soap stored on property owned by Beaulieu Plantation, Inc. ("Beaulieu"). The claims against Torque and Kinsale arise out of a breach of the lease agreement between Torque and Beaulieu. Specifically, the Lease provided that, if the Property became contaminated with "hazardous material" – as defined by the Lease - as a result of the acts of Torque or its

---

[1] Rec. Doc. 13.
[2] As Aspen is the insurance company of Meridian, any and all reference to Meridian or Plaintiff includes both Meridian and Aspen for the purposes of this *Ruling*.
[3] Rec. Doc. 51.
[4] Rec. Doc. 54.
48055

"invitees, agents, or otherwise," Torque had to indemnify and hold Beaulieu harmless for all damages or losses, including attorney's fees, arising as a result of the contamination.[5] The Lease also required Torque, at its expense, to promptly take any and all necessary actions to return the Property to the condition existing before the presence of any "hazardous material."[6] Meridian instituted suit after it executed an Assignment of Claims ("the Assignment") with Beaulieu, assigning Meridian "any and all claims and causes of action of any kind whatsoever … which [Beaulieu] may have against all persons and entities that are related to the Product Release" that gave rise to the instant lawsuit.[7]

The Product Release in the Assignment is a reference to the incident giving rise to this suit foregoing lawsuit. Meridian alleges that, on or about March 6, 2017, a spill, release, or discharge of Black Liquor Soap was discovered at the Beaulieu property and was caused by the actions of Torque.[8] Meridian further alleges that it incurred approximately $2,625,000.00 in expenses to clean up, remediate, and/or restore the property and surrounding ditches which were contaminated by the Black Liquor Soap.[9]

Kinsale brings the current *Motion* arguing that it is entitled to summary judgment as a matter of law because the insurance policy issued to Torque has an Absolute Pollution and Pollution Related Liability exclusion which excludes coverage for all the claims alleged by Meridian, as that exclusion has been interpreted, by the Louisiana Supreme Court in *Doerr v. Mobil Oil Corp.*[10]

---

[5] Rec. Doc. 1-3, pp. 5, 28-31.
[6] *Id.*
[7] Rec. Doc. 1-3, p. 37.
[8] *Id.* at p. 6.
[9] *Id.* at pp. 6-7.
[10] 2000-0947, (La. 12/19/00); 774 So. 2d 119, *opinion corrected on reh'g,* 2000-0947 (La. 3/16/01), 782 So. 2d 573.
48055

In opposition, Meridian argues that Kinsale's *Motion* should be denied because there is a material issue of fact as to whether the Absolute Pollution Exclusion applies.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[12] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[13] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[14] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[15]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[11] Fed. R. Civ. P. 56(a).
[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[13] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[14] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[15] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

48055

reasonable jury could return a verdict for the nonmoving party.'"[16] All reasonable factual inferences are drawn in favor of the nonmoving party.[17] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[18] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get a jury without any "significant probative evidence tending to support the complaint."'"[19]

### B. The Policy Language

Kinsale's policy, Policy No. 0100033968-1 issued to Torque, is a commercial general liability policy which contains an "Absolute Pollution Exclusion" that provides in pertinent part, as follows:

> The following exclusions are added to this policy. If this policy already includes a pollution exclusion or a pollution related exclusion, such exclusion(s) is (are) deleted and replaced with the following:
>
> 1. This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" or other injury or damage arising directly or indirectly out of, related to, or, in any way involving:
>
> Pollution/environmental impairment/contamination or any expenses or any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or

---

[16] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[17] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[18] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[19] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
48055

expense is expected by any insured or any person or entity, is excluded throughout this policy.

2. This insurance does not apply to any damages, claim, or "suit" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

   a. "Bodily injury", "personal and advertising injury", "property damage" or other injury or damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

   b. Any loss, cost, expense, fines and/or penalties arising out of any (i) request, demand, order, governmental authority or directive that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of "pollutants", environmental impairments, contaminants or (ii) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of "pollutants", environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

These exclusions apply regardless of whether:

1. Injury or damage claimed is included within the "products-completed operations hazard" of the policy; or

2. An alleged cause for the injury or damage is the insured's negligent hiring, placement, training, supervision, retention, act, error or omission.

The following definition is added to the policy. If the policy already includes a definition of "pollutants" such definition is deleted and replaced with the following:

"Pollutants" means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste,

biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.[20]

## C. Interpretation of Insurance Contracts

Because subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the law of the forum state. In Louisiana, in an action under an insurance contract, the insured bears the burden of proving the existence of policy and coverage. The insurer, however, bears the burden of showing any policy limits or exclusions.[21] Summary judgment declaring a lack of coverage under an insurance policy is not proper unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.[22]

An insurance policy is a contract between the parties and should be construed using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.[23]

---

[20] Rec. Doc. 13-3, pp. 37-38.
[21] *Tunstall v. Stierwald*, 2001–1765 (La. 2/26/02); 809 So.2d 916; *Curry v. Taylor*, 40,185 (La. App. 2d Cir. 9/21/05); 912 So.2d 78; *Whitham v. Louisiana Farm Bureau Casualty Insurance Company*, 45,199 (La. App. 2d Cir. 4/14/10); 34 So.3d 1104.
[22] *Elliott v. Continental Casualty Company,* 2006–1505 (La. 2/22/07); 949 So.2d 1247; *Reynolds v. Select Properties, Ltd.,* 93–1480 (La. 4/11/94); 634 So.2d 1180; *Palmer v. Martinez*, 45,318 (La. App. 2d Cir. 7/21/10); 42 So.3d 1147, *writs denied*, 2010–1952, 2010–1953, 2010–1955 (La. 11/5/10); 50 So.3d 804, 805.
[23] *Curry v. Taylor, supra*; *Whitham v. Louisiana Farm Bureau Casualty Insurance Company, supra*.
48055

Louisiana courts have held that insurance companies have the right to limit coverage in any manner they desire, as long as the limitations do not conflict with statutory provisions or public policy.[24] The Louisiana Supreme Court has specifically addressed the pollution exclusion at issue here:

> [A] total pollution exclusion was neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind. Instead, we find that "[i]t is appropriate to construe [a] pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution, and under such interpretation, [the] clause will not be applied to all contact with substances that may be classified as pollutants." *Russ, supra,* at § 127:6 n. 62. The applicability of a total pollution exclusion in any given case must necessarily turn on several considerations:
>
> (1) Whether the insured is a "polluter" within the meaning of the exclusion;
>
> (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and
>
> (3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.[25]

Kinsale argues that the second part of the Absolute Pollution Exclusion meets the *Doerr* factors presented above. The Court will discuss each of these enumerated factors below.

### D. The Absolute Pollution Exclusion

i. <u>Torque is a Polluter</u>

In determining whether an insured is a Polluter, the Louisiana Supreme Court enunciated the following considerations: (1) the nature of the insured's business, (2) whether that type of business presents a risk of pollution, (3) whether the insured has a

---

[24] *Elliott v. Continental Casualty Company, supra*; *Reynolds v. Select Properties, Ltd., supra*; *Chretien v. Thomas,* 45,762 (La.App.2d Cir.12/15/10), 56 So.3d 298.
[25] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 135, *opinion corrected on reh'g,* 2000-0947 (La. 3/16/01), 782 So. 2d 573.
48055

separate policy covering the disputed claim, (4) whether the insured should have known from a read[ing] of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, (5) who the insurer typically insures, (6) any other claims made under the policy, and (7) any other factor the trier of fact deems relevant to this conclusion.[26]

Here, Torque is alleged to be an operator of tank storage facilities located in Port Allen, Louisiana.[27] The company was originally formed for the purpose of transporting and storing calcium chloride for Meridian.[28] In 2016, Torque began storing Black Liquor Soap for Meridian.[29] While the Court located no Louisiana jurisprudence providing guidance on whether a trucking and storage company such as Torque qualifies as a polluter, the summary judgment evidence indicates that Torque anticipated that its business presented a risk of pollution. The record evidence shows that the lease agreement between Torque and Beaulieu required Torque to carry both general liability insurance in the amount of $1,000,000 and pollution insurance in the amount of $5,000,000.[30] In addition, the lease contains a lengthy environmental provision prohibiting contamination of the property or its neighbors and describes in detail the repercussions if contamination should occur.[31]

In arguing that Torque is not a polluter, Meridian presents evidence of Torque's subjective opinion that the materials it hauls are not hazardous or that it has never

---

[26] *Doerr*, 782 So. 2d at 135.
[27] Rec. Doc. 1-3, p. 3.
[28] Rec. Doc. 51-2, pp. 3-6.
[29] Rec. Doc. 1-3, p. 4.
[30] *Id.* at pp. 20-21.
[31] *Id.* at pp. 28-31.
48055

transported hazardous waste.[32] Additionally, Meridian argues that Torque lacks the equipment and procedures associated with a polluter.[33] Meridian provides no case law to support this argument and fails to explain what equipment or procedures would normally be associated with a polluter. As such, Meridian has failed to present evidence to demonstrate a material issue of fact as to whether Torque is a polluter. Considering the factors enumerated in *Doerr*, the Court finds that Torque is a polluter within the meaning of the exclusion.

    ii. <u>Black Liquor Soap is a Pollutant</u>

In determining whether an injury-causing substance is a pollutant, the Louisiana Supreme Court enunciated the following considerations: (1) the nature of the injury-causing substance, (2) its typical usage, (3) the quantity of the discharge, (4) whether the substance was being used for its intended purpose when the injury took place, (5) whether the substance is one that would be viewed as a pollutant as the term is generally understood, and (6) any other factor the trier of fact deems relevant to that conclusion.[34]

Here, Kinsale argues that the policy defines pollutants as including any "irritant or contaminant."[35] Further, Kinsale argues that the Petition itself forecloses any argument that Black Liquor Soap is not a pollutant insofar as it alleges that the soap "harmed and contaminated the soil," caused "contamination on the Property," "led to the contamination of the Property and nearby ditches," and caused "contamination on the property."[36] Finally, Kinsale contends any argument by Meridian that Black Liquor Soap is not harmful

---

[32] Rec. Doc. 51, p. 2.
[33] *Id.*
[34] *Doerr*, 782 So. 2d at 135.
[35] Rec. Doc. 13-1, p.9; Rec. Doc. 13-3, p. 38.
[36] Rec. Doc. 13-1, p. 9, citing to the Petition at Rec. Doc. 1-3, pp. 8-11.
48055

to the environment is directly refuted by Louisiana Senate Resolution 183 which found that "black liquor impacts the environment through destruction of aquatic ecosystems, and kills a large number of fish estimated possibly in excess of fourteen million, turtles, mussels and other listed endangered species in the Pearl River… ."[37]

Kinsale's arguments are supported by the Court's findings as well. The Environmental Protection Agency ("EPA")[38] issued a document entitled Technical Support Document for Best Management Practices for Spent Pulping Liquor Management, Spill Prevention and Control,[39] which provides:

> The BMPs [Best Management Practices] establish controls that will reduce the release of toxic, conventional, and nonconventional pollutants to navigable waters. The principal objective of the BMPs is to prevent losses and spills of spent pulping liquor (also referred to as "black liquor" at kraft mills) from equipment items in pulping liquor service; the secondary objective is to contain, collect, and recover, or otherwise control, spills, losses and intentional liquor diversions that do occur. **The BMPs also apply to pulping by-products, such as turpentine and soap, for mills that process these items.**[40]

Section 5.6 of the document is entitled, "Toxic and Hazardous Pollutants Found in

---

[37] https://www.legis.la.gov/legis/BillInfo.aspx?s=12RS&b=SR183.
[38] Under Federal Rule of Evidence 201 the Court takes Judicial notice of the following document issued by the EPA because the accuracy of such cannot be reasonably questioned. Federal Rule of Evidence 201 provides that: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
[39] EPA-B21-R-97-011 found at https://nepis.epa.gov/Exe/ZyNET.exe?ZyAction=ZyActionS&Client=EPA&Index=2011+Thru+2015&Index=2000+Thru+2005&Index=2006+Thru+2010&Index=Prior+to+1976&Index=1976+Thru+1980&Index=1981+Thru+1985&Index=1986+Thru+1990&Index=1991+Thru+1994&Index=1995+Thru+1999&Index=Hardcopy+Publications&Docs=&Query=pulp+pulping+paper+liquor+mill&Time=&SearchMethod=2&TocRestrict=n&Toc=&TocEntry=&QField=&QFieldYear=&QFieldMonth=&QFieldDay=&UseQField=&IntQFieldOp=0&ExtQFieldOp=0&File=&User=ANONYMOUS&Password=anonymous&SortMethod=h%7C-&MaximumDocuments=15&MaximumPages=1&FuzzyDegree=0&ImageQuality=r85g16%2Fr85g16%2Fx150y150g16%2Fi500&Display=hpfr&DefSeekPage=x&SearchBack=ZyActionL&Back=ZyActionS&BackDesc=Results%20page.
[40] *Id.* at p. 13.
48055

Turpentine and Soap."[41] As demonstrated by this document, the EPA considers Black Liquor Soap to be and or contain toxic and hazardous pollutant(s). As such, the Court finds there is no genuine issue of material fact regarding Black Liquor Soap being a pollutant.

    iii. <u>There was a discharge, dispersal, seepage, migration, release or escape of Black Liquor Soap</u>

In determining whether there was a "discharge, dispersal, seepage, migration, release or escape," the Louisiana Supreme Court enunciated the following considerations: (1) whether the pollutant was intentionally or negligently discharged, (2) the amount of the injury-causing substance discharged, (3) whether the actions of the alleged polluter were active or passive, and (4) any other factor the trier of fact deems relevant.[42]

Here, Meridian clearly alleges that there was a "spill, release, or discharge of the Black Liquor Soap… discovered at the property."[43] Additionally, Meridian alleges and admits in their statement of undisputed facts that they incurred or expended approximately $2,625,000 in remediation as a result of the March release.[44] Finally, neither party argues that there is a dispute as to whether there was actually a discharge of the Black Liquor Soap at the Beaulieu property. Both Parties' statement of undisputed facts submit that Black Liquor Soap spread onto the Beaulieu property, the soil, and nearby ditches.[45] There is no issue of material fact as to whether there was a release or

---

[41] *Id.* at p. 48.
[42] *Id.* at 136.
[43] Rec. Doc. 1-3, p. 6.
[44] *Id.* at p. 7; Rec. Doc. 51-1, p. 2.
[45] Rec. Doc. 13-4, p. 2; Rec. Doc. 51-1, p. 2.
48055

discharge of Black Liquor Soap at the property. Any argument by Meridian that there was not a discharge is directly in conflict with its own claims forming the basis of this lawsuit.

Meridian disputes that Torque caused the undisputed discharge. However, liability and causation are not at issue. The only issue is whether Kinsale's policy covers the alleged loss. For purposes of determining the issue of coverage, the Court finds that there was in fact a discharge of Black Liquor Soap on the Beaulieu property.

As discussed above, the Court finds that the Absolute Pollution Exclusion in Kinsale's policy meets the three factors as set forth in *Doerr*. The Court finds that the second part of Kinsale's Absolute Pollution Exclusion unambiguously excludes coverage for damages arising out of the release of the Black Liquor Soap on Beaulieu's property. Since the Court finds that the second part of the Absolute Pollution Exclusion unambiguously excludes coverage of Meridian's claims, an analysis of the first part of the exclusion is unnecessary.

Kinsale argues that if either part of the Absolute Pollution Exclusion applies, there is no coverage for the lawsuit as a whole, regardless of the specific damages alleged.[46] In its Petition, Meridian claims it is entitled to all damages or losses, including attorney's fees, arising as a result of the contamination. Additionally, Meridian seeks the loss of the value of the Black Liquor Soap. The Absolute Pollution Exclusion applies to any "damages, claim, or 'suit' arising out of the… release or escape of "pollutants." Thus, the Court finds that the exclusion unambiguously applies to all of Meridian's claims for damages or losses, including attorney's fees, arising as a result of the contamination.

---

[46] Rec. Doc. 13-1, p. 15.

48055

However, the Court finds that the exclusion does not unambiguously apply to a claim of damages for the value of the Black Liquor Soap itself which was lost. Kinsale argues that such a loss is excluded under other parts of the policy.

### E. Care, custody, or control exclusion

In addition to environmental cleanup costs, Meridian seeks damages for the value of the lost Black Liquor Soap itself. Kinsale argues that these damages are independently excluded by the care, custody, or control exclusion of the policy. For the following reasons, the Court agrees that the claim for the value of the lost liquor soap is unambiguously excluded under the Kinsale policy.

Meridian alleges that it entered into a depositary contract with Torque to store Black Liquor Soap and that Torque failed to fulfill its obligations and is liable for the loss of the value of the soap.[47] Kinsale argues that Section 2(j)(4) of the policy excludes coverage for "'[p]roperty damage' to … [p]ersonal property in the care, custody, or control of the insured."[48]

In support of its argument, Kinsale cites to several Louisiana cases analyzing whether a care, custody, or control exclusion applied in situations where damage occurred while an insured was in possession or under control of property belonging to another.[49] The language in the Kinsale policy is almost identical to all of the cases cited, and in each case, the court found that the policy language excluded coverage for damage sustained while the property was in control or possession of the insured.

---

[47] Rec. Doc. 1-3, pp. 12-13.
[48] Rec. Doc. 13-3, p. 8.
[49] See *Keller v. Case,*1999-0424 (La. App. 1 Cir. 3/31/00); 757 So.2d 920; *Bergquist v. Fernandez*, 535 So.2d 827 (La. App. 2d Cir. 8/17/88); *Duchman v. Orleans Mar. Brokerage, Inc.*, 603 So.2d 818 (La. App. 4 Cir. 1992).
48055

In opposition to Kinsale's argument, Meridian asserts that summary judgment is inappropriate because there is conflicting evidence as to who had control over the Black Liquor Soap as of the date it was lost. Specifically, Meridian claims that Torque "disavows any responsibility for managing the soap and asserts that it had nothing to do with placing the frac tanks in which the Black Liquor Soap was stored."[50] In support of this argument, Meridian cites to deposition testimony of Torque's Federal Rule 30(B)(6) representative, Sean Thomason, who stated that, Meridian did not ask Torque, nor was Torque being paid to maintain or manage the **frac tanks** in which the Black Liquor Soap was stored.[51]

Here, Meridian alleged that: (1) Torque was in the care, custody, and control of the Black Liquor Soap at the time the damage occurred, (2) Meridian paid Torque to take possession of and store the Black Liquor Soap; and (3) that Torque would hold the soap for safekeeping under the obligation of returning the soap to Meridian upon demand. Now, to avoid summary judgment, Meridian argues that there is a genuine fact dispute as to whether Torque was a depositary because of the testimony given by Torque's representative, Sean Thomason. However, that testimony clearly conveys that Torque was under no impression that it had any responsibilities for maintaining or managing the frac tanks themselves. The Court finds this argument disingenuous in light of Meridian's allegations.

Meridian's attempt at creating an issue of fact fails because it is irrelevant to the question of whether coverage is excluded under Kinsale's policy. As such, a determination of whether Torque was or was not Meridian's depositary is unnecessary.

---

[50] Rec. Doc. 51, p. 9.
[51] Rec. Doc. 51-2, p. 25.
48055

*Assuming* Torque was the depositary, the Court finds that coverage for the loss would be excluded under the policy. Therefore, the Court finds that the care, custody, or control exclusion of the Kinsale policy unambiguously excludes coverage for any claim to property damage or loss of the Black Liquor Soap if it was in Torque's possession.

### F. Meridian's Claim for Attorney Fees

The Court does not reach the issue of deciding whether Meridian's claim for attorney's fees is excluded under the contractual liability exclusion of the Kinsale policy. Any attorney's fees for breach of the lease agreement between Torque and Beaulieu are unambiguously excluded as "damages… arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" under the Absolute Pollution Exclusion as discussed above. Therefore, an individual analysis of whether the contractual liability exclusion applies is unnecessary because Kinsale is not responsible as a matter of law for environmental liability damages as set forth above.

## III. CONCLUSION

For the foregoing reasons, Defendant, Kinsale Insurance Company's *Motion for Summary Judgment*[52] is **GRANTED** as to all claims by Meridian, as they are unambiguously excluded under the insurance policy issued to Torque.

Baton Rouge, Louisiana the 27th day of September, 2018.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. 13.

48055